ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL ESPECIAL

| ROSADO DEL VALLE CONTRACTOR LLC<br><br>Recurrente<br><br>v.<br><br>MUNICIPIO DE JAYUYA<br><br>Recurrido | KLRA202500252 | *Revisión Judicial* procedente del Municipio Autónomo de Jayuya<br><br>Subasta Informal Núm.: 2024-2025-04<br><br>Sobre: Impugnación de Subasta |
|---|---|---|

Panel integrado por su presidente, el Juez Rodríguez Casillas, el Juez Marrero Guerrero, el Juez Campos Pérez y el Juez Sánchez Báez

Campos Pérez, Juez Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 13 de junio de 2025.

El 2 de mayo de 2025, la parte recurrente del epígrafe, Rosado del Valle Contractor, LLC (en adelante, Rosado del Valle) presentó por derecho propio un *Recurso de revisión administrativa.* Nos solicitó el examen de la *Notificación de adjudicación* de una Subasta Informal realizada por la parte recurrida, Junta de Subastas del Gobierno Municipal de Jayuya (en adelante, Junta de Subastas). En la referida determinación, la Junta de Subastas adjudicó la buena pro a favor de otro contendiente.

Anticipamos que, por los fundamentos que expondremos a continuación, se desestima el recurso presentado, toda vez que no fue perfeccionado adecuadamente ni se acreditó justa causa.

**I.**

La Junta de Subastas realizó la Subasta Informal 2024-2025-04 (PW 7105: Sector Los Candelario, Bo. Veguita) con el fin de solicitar cotizaciones para el arrendamiento de una excavadora —ocho a diez toneladas, con operador y combustible— durante un periodo de seis meses. A la invitación comparecieron tres licitadores; a saber:

- CONSTRUCCIONES DEL VIVI & AGREGADOS CORP. (jesusarceproductor@gmail.com)

- ROSADO DEL VALLE CONTRACTOR LLC (rdvcontractor4@gmail.com)
- FERCON LLC (ferconllc@gmail.com)

Las propuestas presentadas fueron las siguientes:

- CONSTRUCCIONES DEL VIVI & AGREGADOS CORP.
  Costo por mes: $8,600.00          Costo total: $51,600.00
- **ROSADO DEL VALLE CONTRACTOR LLC**
  **Costo por mes: $8,840.00          Costo total: $50,880.00**
- FERCON LLC
  Costo por mes: $14,000.00          Costo total: $84,000.00

Ante la incongruencia de valores en la propuesta de la parte recurrente, la Junta de Subastas acogió el costo unitario consignado de $8,840.00 y lo multiplicó por el periodo de arrendamiento de seis meses, para un total de **$53,040.00**. Entonces, así evaluadas las propuestas presentadas, la Junta de Subastas notificó la adjudicación de la buena pro a favor de Construcciones del Vivi & Agregados. Según explicó la parte recurrida, el licitador "presentó [una] cotización que se considera justa y razonable a los mejores intereses para el Municipio de Jayuya. El criterio utilizado fue basado en la oferta más económica".

Surge del expediente que, el 23 de abril de 2025, la Junta de Subastas notificó simultáneamente por correo electrónico a los tres proponentes. No obstante, se desprende del documento que el organismo administrativo municipal omitió consignar las advertencias de rigor al remedio apelativo que provee el ordenamiento legal.

Consta en los autos que Rosado del Valle remitió a la Junta de Subastas —por correo electrónico y de manera personal— sendas comunicaciones escritas intituladas como *Apelación de Subasta Informal 2024-2025 PW 7105*. En éstas, indicó que invirtió los números y que el verdadero costo unitario era de **$8,480.00**, por lo que el precio total correspondía a **$50,880.00** según licitado.

La Junta de Subastas hizo caso omiso de las comunicaciones del recurrente; y Rosado del Valle acudió oportunamente ante esta curia. Adujo, en esencia, que la subasta informal no se adjudicó al licitador que presentó la oferta más económica. Como fundamentos para la revisión judicial expuso lo siguiente:

> 1. Certificamos que nuestra propuesta de licitador para la Subasta Informal: 2024-3025-04 PW 7105 resulta ser la más baja con la cantidad de $50,880.00. Sin embargo, este valor fue alterado para evaluar la adjudicación de acuerdo al análisis cuantitativo utilizado por la Junta.
>
> 2. La cantidad en el renglón del costo por mes tiene un error gramatical de trasposición de números, debería ser $8,480.00 y no $8,840.00, pero esto no altera el resultado del costo total licitado.
>
> 3. Según los pliegos y las especificaciones de esta subasta, los precios deben ser estipulados por números, no especifica que se tome en consideración sólo una de las partidas de dicho desglose. Además, no recibimos notificación escrita o telefónica para aclarar la discrepancia para subsanar el error con una nota marginal con nuestra firma como indica el inciso.
>
> 4. La notificación de adjudicación fue enviada por correo electrónico y no por correo postal regular ni certificado.
>
> 5. La notificación de adjudicación no contiene:
> > a. El derecho de las partes afectadas de acudir ante el [T]ribunal de [A]pelaciones para la revisión judicial.
> > b. Término para apelar la decisión
> > c. A partir de qué fecha comenzará a transcurrir el término.

Como remedio peticionó la revisión de la adjudicación para evaluar su validez.

Finalmente, en lo que nos atañe, la parte recurrente certificó la notificación del recurso administrativo únicamente a la Junta de Subastas del Municipio de Jayuya. Es decir, no consignó la certificación de la notificación a los otros dos licitadores participantes. A tales efectos, el 7 de mayo de 2025, emitimos una *Resolución*, para que en el plazo de cinco días, Rosado del Valle evidenciara el cumplimiento de la Regla 58 (B) del Reglamento de Apelaciones. Por

igual, ordenamos a la parte recurrida a presentar su alegato en el término reglamentario.

En respuesta, Rosado del Valle indicó y mostró evidencia de su notificación a la Junta de Subastas, mediante correo certificado. No obstante, nuevamente omitió certificar la notificación oportuna al agraciado y a Fercon LLC, por correo electrónico. Tampoco acreditó justa causa alguna.

Luego, habiendo transcurrido el término reglamentario provisto sin que la Junta expusiera su postura, dimos por perfeccionado el recurso. Así, pues, resolvemos sin el beneficio de su comparecencia.

**II.**

**A.**

La marcha ordenada y efectiva de los procedimientos judiciales es un imperativo de nuestro ordenamiento jurídico. Como corolario de ese principio, es una norma conocida que **el incumplimiento con las reglas de los tribunales apelativos impide la revisión judicial**. *Soto Pino v. Uno Radio Group*, 189 DPR 84, 90 (2013); *Cárdenas Maxán v. Rodríguez*, 119 DPR 642, 659 (1987). En ese sentido, **las normas que rigen el perfeccionamiento de todos los recursos apelativos deben observarse rigurosamente**. *Soto Pino v. Uno Radio Group, supra*; *Rojas v. Axtmayer Ent., Inc.*, 150 DPR 560, 564 (2000).

Con relación a lo anterior, nos remitimos a la Parte VII del Reglamento del Tribunal de Apelaciones, 4 LPRA Ap. XXII-B, la cual gobierna el trámite de los recursos de revisión instados ante este foro. En particular, en inciso (B) de la Regla 58 de nuestro Reglamento, *supra*, establece el **requisito de notificación del recurso**. Veamos.

(B) **Notificación a las partes**

(1) Cuándo se hará

**La parte recurrente notificará el escrito de revisión debidamente sellado con la fecha y hora de su presentación** a los abogados o abogadas de récord del trámite administrativo o, en su defecto, **a las partes**, así como a la agencia o al funcionario administrativo o

funcionario administrativa de cuyo dictamen se recurre, **dentro del término para presentar el recurso, siendo éste un término de cumplimiento estricto.**

.    .    .    .    .    .    .    .

(4) Certificación de notificación

**La parte recurrente certificará al Tribunal de Apelaciones en el escrito de revisión el método mediante el cual notificó o notificará a las partes, y el cumplimiento con el término dispuesto para ello**. La parte recurrente podrá certificar al tribunal en una moción suplementaria cualquier cambio en cuanto a la certificación original dentro de los tres días laborables siguientes al día de la presentación del escrito de revisión. **El término aquí dispuesto será de cumplimiento estricto**. (Énfasis nuestro).

En síntesis, la precitada regla requiere que el recurrente notifique el escrito de revisión a todas las partes, dentro del mismo término para presentar el recurso, siendo éste un término de cumplimiento estricto. Con relación a los términos de cumplimiento estricto, el Tribunal Supremo ha opinado que este foro apelativo no goza de discreción para prorrogarlos de manera automática. *Rivera Marcucci v. Suiza Dairy*, 196 DPR 157, 170 (2016). Únicamente tenemos discreción para extender un término de cumplimiento estricto si concurren las siguientes condiciones: (1) que en efecto exista justa causa para la dilación; y (2) que la parte le demuestre detalladamente al tribunal las bases razonables que tiene para la dilación, es decir, que acredite de manera adecuada la justa causa aludida. *Soto Pino v. Uno Radio Group*, *supra*, pág. 93.

En fin, el requisito de notificación a las partes ha sido incorporado a la práctica jurídica con el interés de salvaguardar el debido proceso de ley de aquellas partes que podrían verse afectadas por la presentación de un recurso apelativo. *Pérez Soto v. Cantera Pérez Inc.,* 188 DPR 98, 106 (2013). En los procedimientos de subastas, el Tribunal Supremo ha reconocido que, además del licitador a quien se adjudicó la buena pro, los licitadores perdidosos en el proceso conservan un interés real en el resultado de la revisión

judicial de una adjudicación de subasta —aun cuando no la hayan impugnado— por lo que también se consideran partes. Por ende, **es imperativo notificar mediante copia del recurso de revisión a todos los licitadores que comparecieron a la subasta, pues la falta de notificación nos priva de jurisdicción**. *Const I. Meléndez, S.E. v. A.C.* 146 DPR 743, 750 (1998).

**B.**

Nuestro alto foro judicial ha definido *jurisdicción* como el poder o autoridad que ostentan los tribunales para considerar y decidir los casos y las controversias ante su atención. *Beltrán Cintrón v. ELA*, 204 DPR 89, 101 (2020), que cita a *Torres Alvarado v. Madera Atiles*, 202 DPR 495 (2019). Es norma reiterada que los tribunales debemos ser celosos guardianes de nuestra jurisdicción, ya que no tenemos discreción para asumirla si no la hay. Por ello, las cuestiones relativas a la jurisdicción son privilegiadas y, como tal, deben atenderse y resolverse con preferencia y prontitud. La falta de jurisdicción no es susceptible de ser subsanada. Más aún, ante un cuestionamiento de falta de jurisdicción, estamos compelidos a auscultarla, toda vez que el planteamiento jurisdiccional incide directamente sobre el poder para adjudicar una controversia. **Un dictamen emitido sin jurisdicción es nulo en Derecho y, por lo tanto, inexistente**. En consecuencia, una vez un tribunal determina que no tiene jurisdicción para entender en el asunto presentado ante su consideración, procede la inmediata desestimación del recurso apelativo de conformidad con lo ordenado por las leyes y los reglamentos. *S.L.G Szendrey-Ramos v. F. Castillo*, 169 DPR 873, 882-883 (2007); *Torres Alvarado v. Madera Atiles*, *supra*, págs. 499-500. Al respecto**, la Regla 83 del Reglamento del Tribunal de Apelaciones**, 4 LPRA Ap. XXII-B, **autoriza a esta curia a desestimar un recurso apelativo**, bajo el fundamento de **falta de jurisdicción**, estatuido en el inciso (B) (1) de la misma norma procesal.

**C.**

El proceso de contratación de servicios por el aparato gubernamental está revestido del más alto interés público, toda vez que aspira "promover la *inversión adecuada, responsable y eficiente de los recursos del Estado*". (Cursivas en el original). *Super Asphalt v. AFI y otro*, 206 DPR 803, 820 (2021); *ECA General Contractors, Inc. v. Municipio*, 200 DPR 665, 672 (2018). De ordinario, el procedimiento de subasta es el vehículo utilizado por el Gobierno en la adquisición de bienes y servicios. *Super Asphalt v. AFI y otro, supra*, págs. 820-821; *ECA General Contractors, Inc. v. Municipio, supra*, pág. 672. "[L]a subasta gubernamental procura establecer un esquema que asegure la competencia equitativa entre los licitadores, evite la corrupción y minimice los riesgos de incumplimiento". *Super Asphalt v. AFI y otro, supra*, pág. 821; *ECA General Contractors, Inc. v. Municipio, supra*, págs. 672-673.

En lo que nos compete, el Artículo 2.040 del Código Municipal, 21 LPRA secc. 7216, en su parte pertinente, dispone los criterios que rigen a la Junta de Subastas:

> La Junta entenderá y adjudicará todas las subastas que se requieran por ley, ordenanza o reglamento y en los contratos de arrendamiento de cualquier propiedad mueble o inmueble y de servicios, tales como servicios de vigilancia, mantenimiento de equipo de refrigeración y otros.
>
> a. *Criterios de adjudicación* — **Cuando se trate de** compras, construcción o **suministros de servicios**, **la Junta adjudicará a favor del postor razonable más bajo**. [...] La Junta hará las adjudicaciones **tomando en consideración que las propuestas sean conforme a las especificaciones**, los términos de entrega, la habilidad del postor para realizar y cumplir con el contrato, la responsabilidad económica del licitador, su reputación e integridad comercial, la calidad del equipo, producto o servicio y cualesquiera otras condiciones que se hayan incluido en el pliego de subasta.
>
> .     .     .     .     .     .     .     .
>
> **La adjudicación de una subasta será notificada a todos los licitadores certificando el envío de dicha adjudicación** mediante correo certificado con acuse de recibo, o **mediante correo electrónico, si así fue**

**provisto por el licitador o licitadores**. [...] La Junta de Subasta notificará a los licitadores no agraciados las razones por las cuales no se le adjudicó la subasta. **Toda adjudicación tendrá que ser notificada a cada uno de los licitadores, apercibiéndolos del término jurisdiccional de diez (10) días para solicitar revisión judicial de la adjudicación ante el Tribunal de Apelaciones, de conformidad con el Artículo 1.050 de este Código**. (Énfasis nuestro).

En cuanto al apercibimiento del recurso de revisión disponible ante este foro intermedio, según mandata el Código Municipal, *supra*, se sabe que es parte inherente del debido proceso de ley. Ahora, apuntamos que en *P.R. Eco Park, et al. v. Mun. de Yauco*, 202 DPR 525, 540 (2019), nuestro Tribunal Supremo expresó que, habiendo la parte promovente presentado su recurso y ante la ausencia de incuria, este foro intermedio está compelido a resolverlo en sus méritos.

De otro lado, en lo que concierne al caso de autos, el *Reglamento para la Administración Municipal de 2016*, Reglamento Núm. 8873 de 19 de diciembre de 2016, en la Parte II, Sección 8 (6), que versa sobre la presentación de las ofertas de una subasta, dispone que éstas **"deberán ser sometidas tomando como base el precio unitario indicado**...". (Énfasis nuestro). Añade la reglamentación que los ayuntamientos se reservan el derecho de rechazar cualquier oferta global, que no incluya el precio unitario por partidas.

**III.**

Según reseñamos, Rosado del Valle licitó en el proceso de Subasta Informal 2024-2025-04, celebrada por la Junta de Subastas del Gobierno Municipal de Jayuya. En ésta, la Junta de Subastas solicitó cotizaciones para el alquiler por el plazo de seis meses de una excavadora con ciertas especificaciones. El 23 de abril de 2025, la Junta de Subastas notificó a los tres participantes por correo electrónico, según provee el Código Municipal, *supra*, que la buena pro había sido adjudicada a Construcciones del Vivi & Agregados, compañía que presentó la cotización más baja al licitar un canon de

arrendamiento de $8,600.00 para un total de $51,600.00. Ello así, porque el ente municipal se basó en el precio unitario del canon de arrendamiento de cada proponente, como orienta el Reglamento Núm. 8873, *supra.* Basado en el mismo principio, en el caso del recurrente, la Junta de Subastas multiplicó la cifra ofertada de $8,840.00 mensuales por el término de seis meses, para un total de $53,040.00. Aun cuando el recurrente afirma que licitó una cifra inferior, la discrepancia alegada únicamente le es imputable al recurrente.

Asimismo, si bien la Junta de Subastas omitió apercibir a los licitadores de su derecho apelativo a una revisión judicial ante esta curia, en el término jurisdiccional de diez días, lo cierto es que Rosado del Valle presentó su recurso de manera oportuna el 2 de mayo de 2025. Según lo pautado en *P.R. Eco Park, et al. v. Mun. de Yauco,* teníamos autoridad para resolver los méritos de las cuestiones litigiosas presentadas.

No obstante, al auscultar nuestra jurisdicción, advertimos que la parte recurrente notificó copia del recurso de revisión a la Junta de Subastas, pero no certificó ni acreditó haber notificado el recurso y el apéndice al resto de los licitadores, quienes comparecieron a la subasta y proveyeron sus correos electrónicos. Es decir, de conformidad con el ordenamiento reseñado, Rosado del Valle contaba con un término jurisdiccional de diez días, desde el envío del correo electrónico de la *Notificación de adjudicación,* para presentar ante nuestra consideración el recurso de revisión judicial. En dicho término, a su vez, debió notificar copia del recurso a Construcciones del Vivi & Agregados y a Fercon, siendo esto un requisito de cumplimiento estricto. En vista de que la parte recurrente no notificó el recurso instado a los licitadores que comparecieron a la subasta y que tampoco nos acreditó una justa causa para su omisión, como se lo solicitamos, resulta forzoso colegir que la falta de notificación del recurso nos priva de jurisdicción y procede su desestimación. En

torno a esto, es necesario precisar que **el hecho de que las partes comparezcan por derecho propio, por sí solo, no justifica que incumplan con las reglas procesales**. *Febles v. Romar*, 159 DPR 714, 722 (2003).

**IV.**

Por los fundamentos antes expresados y al amparo de la Regla 83 (C) del Reglamento del Tribunal de Apelaciones, *supra*, desestimamos el recurso de revisión administrativa, por falta de jurisdicción.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda.  Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones